UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MAURA O'NEILL,

                Plaintiff,

         v.

NYU LANGONE HOSPITALS, NEW YORK-
PRESBYTERIAN QUEENS, LENOX HILL
HOSPITAL, *and* CITY OF NEW YORK,

                Defendants.
-------------------------------------------------------------x

**MEMORANDUM AND ORDER**
23-CV-4679 (RPK) (RML)

RACHEL P. KOVNER, United States District Judge:

    *Pro se* plaintiff Maura O'Neill brings this action against NYU Langone Hospitals ("NYU Langone"), New York-Presbyterian Queens ("NYPQ"), Lenox Hill Hospital ("Lenox Hill"), and the City of New York.  NYU Langone, NYPQ, and Lenox Hill each move to dismiss the claims against them.  For the reasons set forth below, defendants' motions to dismiss are granted.

## BACKGROUND

### I.   Factual Allegations

    The following facts are taken from the operative complaint and assumed true for the purposes of this order.

    Plaintiff worked at Deutsche Bank Securities, Inc. from 2004 to 2007.  First Am. Compl. ("FAC") ¶ 10 (Dkt. #13).  During that time, she was sexually harassed by her coworker Christopher Wilder.  *Ibid.*  Wilder stalked plaintiff after she left Deutsche Bank and told a colleague that he intended to "drug" and "rape" her.  *Id.* ¶¶ 12–13.  On January 6, 2017, Wilder "or his agent" drugged plaintiff, and Wilder broke into plaintiff's home and raped her.  *Id.* ¶ 16; *see also id.* ¶ 53. Although plaintiff was never in a relationship with Wilder, he set up fake social-media accounts to impersonate plaintiff "in order to create a 'relationship' that never existed."  *Id.* ¶¶ 17–19.

Wilder enlisted others, including his attorney Margaret Watson and "powerful people," to "thwart any investigation" into his "crimes" and to "undermine, discredit and silence" plaintiff.  *Id.* ¶ 21.  For example, through the fake social-media accounts, Wilder's team created false stories about plaintiff's mental health to discredit her.  *Id.* ¶¶ 30, 37, 64.

Plaintiff went to a New York Police Department ("NYPD") station in 2017 "to report Wilder's sex crimes."  *Id.* ¶ 25.  The NYPD "destroyed evidence, including one of [plaintiff's] rape kits," "lied to [plaintiff] and claimed there was no evidence on her rape kits," and "withheld DNA and toxicology reports from [plaintiff]."  *Ibid.*  The NYPD also shared information about the rape kits with "agents of Wilder."  *Id.* ¶ 26.  Plaintiff claims these actions were "part and parcel of a pattern of behavior in cases in which law enforcement aids and abets wealthy and well-connected sex crime perpetrators."  *Id.* ¶ 28.

According to plaintiff, NYU Langone, NYPQ, and Lenox Hill (collectively, "the hospital defendants") also played a role in aiding and abetting Wilder.  *Id.* ¶¶ 40, 43, 47–48.  When plaintiff went to the hospitals for rape kits, Wilder's attorney Watson or one of Wilder's other agents contacted the hospitals "and made false and malicious claims about [plaintiff] without [plaintiff's] knowledge or consent."  *Id.* ¶ 31.  For example, Wilder's team falsely claimed that plaintiff "belonged in a mental institution" and had various mental-health disorders.  *Id.* ¶ 63; *see id.* ¶¶ 61–62.  "Corrupt ER physicians and medical personnel" used this false information to "make decisions about [plaintiff] having a rape exam."  *Id.* ¶ 65; *see also id.* ¶ 37.  Additionally, the hospital defendants "did not take proper medical histories, properly use lab and ancillary testing procedures, or make proper diagnoses or differential diagnoses," *id.* ¶ 39, they deceived plaintiff by creating fraudulent medical records and denying her access to health information, *id.* ¶¶ 35, 66, 126, 200–03, 213, and they spoke to Wilder's agents about plaintiff without her consent, *id.* ¶ 222.

2

*See also id.* ¶¶ 82–108 (Lenox Hill); *id.* ¶¶ 137–48, 188–89 (NYPQ); *id.* ¶¶ 184–87, 190–91 (NYU Langone).  Two of the hospital defendants, Lenox Hill and NYPQ, failed to procure rape kits.  *Id.* ¶ 42.  NYU Langone collected "evidence for the rape kit, including evidence that [plaintiff] had been drugged with benzodiazepines," but it "provided cover to the NYPD to destroy [plaintiff's] rape kit."  *Ibid.*; *see also id.* ¶¶ 157–59.

Other "professionals" also participated in this alleged conspiracy to aid Wilder, including insurance adjusters and hotel management, *id.* ¶ 69, and numerous judges, *id.* ¶¶ 252, 257.

## II.    Procedural History

Plaintiff brought this action against the hospital defendants in June 2023, and in September 2023, she filed an amended complaint adding the City of New York as a defendant.  *See generally* FAC.  The operative complaint asserts eight claims of fraud against the hospital defendants, *id.* ¶¶ 264–425 (Counts 1–8); one claim of breach of fiduciary duty against all defendants, *id.* ¶¶ 426–36 (Count 9); two claims of breach of fiduciary duty against the hospital defendants, *id.* ¶¶ 437–57 (Counts 10–11); four claims of intentional infliction of emotional distress ("IIED") against the hospital defendants, *id.* ¶¶ 458–93, 525–60 (Counts 12–13, 15–16); one claim of IIED against NYU Langone, *id.* ¶¶ 561–70 (Count 17); one claim under the civil remedies provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against the hospital defendants, FAC ¶¶ 494–524 (Count 14); one claim of civil conspiracy under 42 U.S.C. § 1985 against the City of New York and NYU Langone, *id.* ¶¶ 571–79 (Count 18); and two claims of invasion of constitutional privacy rights under 42 U.S.C. § 1983 against the City of New York, *id.* ¶¶ 580–616 (Counts 19, 20).  Plaintiff seeks monetary damages as relief.  *Id.* p. 104.

Plaintiff has brought numerous other lawsuits arising from the same series of events that are alleged in this action.  As the hospital defendants note, "this lawsuit is approximately the tenth . . . iteration of its kind for the same transactions and occurrences, brought against various

defendants in multiple jurisdictions in the states of Georgia and New York." Mem. of L. in Supp. of Mot. to Dismiss by NYU Langone ("NYU Langone Mot. to Dismiss") at v (Dkt. #15-1); *see id.* at 2 n.3 (collecting cases); Mem. of L. in Supp. of Mot. to Dismiss by NYPQ ("NYPQ Mot. to Dismiss") 3 (Dkt. #26-1). In one case brought in the United States District Court for the Northern District of Georgia, plaintiff filed a similar complaint raising fraud and civil RICO claims against the same hospital defendants named in this case, in addition to other defendants. *See* Compl., *O'Neill v. NYU Langone Med. Ctr.*, No. 22-CV-11 (SEG) (N.D. Ga. Jan. 4, 2022), ECF No. 1. The Northern District of Georgia dismissed plaintiff's claims against NYU Langone and NYPQ in that case, plaintiff having already voluntarily dismissed her claims against Lenox Hill. *See O'Neill v. NYU Langone Med. Ctr.*, No. 22-CV-11 (SEG), 2023 WL 2976284, at *17 (N.D. Ga. Mar. 14, 2023), *appeal dismissed sub nom. O'Neill v. Lenox Hill Hosp.*, No. 23-11212, 2023 WL 6876530 (11th Cir. Oct. 18, 2023); *see also* FAC ¶ 235 (discussing the litigation). At least two judges have warned plaintiff that filing duplicative and redundant lawsuits is an abuse of the judicial process. *See O'Neill v. Khuzami*, No. 20-CV-4632 (JPB), 2022 WL 704696, at *6 n.3 (N.D. Ga. Mar. 9, 2022) (quoting a Justice of the Queens County Supreme Court that "if this is not a complete abuse of the judicial process[,] this Court does not know what is").

In the instant action, the hospital defendants each move to dismiss plaintiffs' claims against them. NYU Langone argues that plaintiff's complaint fails to state plausible claims for which relief can be granted, that the allegations are "deficient in neglecting to allege the exact timing of the alleged occurrences and transactions for purposes of establishing compliance with the applicable statute of limitations," and that the complaint should also be dismissed "pursuant to the doctrines of law of the case, *res judicata*, collateral estoppel and issue and claim preclusion." NYU Langone Mot. to Dismiss 3. NYPQ argues that the complaint fails to state plausible claims for

which relief can be granted and that the complaint violates Federal Rule of Civil Procedure 8(a)(2) because it does not contain a short and plain statement of the claims.  *See generally* NYPQ Mot. to Dismiss.  Lenox Hill argues that the complaint fails to state plausible claims for which relief can be granted and that most of plaintiff's claims are time-barred.  *See generally* Mem. of L. in Supp. of Mot. to Dismiss by Lenox Hill ("Lenox Hill Mot. to Dismiss") (Dkt. #29-2).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted."  To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ibid.* (citing *Twombly*, 550 U.S. at 556–57) (quotation marks omitted).  In contrast, a complaint fails to state a plausible claim when, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or when, as a matter of fact, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679.  Though the court must accept all facts alleged in the complaint as true, it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.

When a plaintiff proceeds *pro se*, her complaint must be "liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotation marks and citations omitted).  *Pro se* status, however, "does not exempt a party from compliance with relevant

rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

The hospital defendants' motions to dismiss are granted because plaintiff fails to state a claim for fraud, breach of fiduciary duty, IIED, civil RICO, or civil conspiracy.

### I.   Fraud

The complaint asserts eight causes of action against the hospital defendants that are labeled as "fraud." FAC ¶¶ 264–425 (Counts 1–8). In *Count 1*, plaintiff alleges that the hospital defendants violated the Health Insurance Portability and Accountability Act ("HIPAA") and state privacy rights by disclosing plaintiff's protected health information to Wilder's agents. *Id.* ¶¶ 264–81. In *Count 2*, plaintiff alleges that the hospital defendants violated federal and state laws by failing to "take proper medical histories, properly use lab and ancillary testing procedures, or make proper diagnoses or differential diagnoses," *id.* ¶ 288, and by falsifying medical records, failing to take a rape kit, and destroying evidence, *id.* ¶¶ 282–306. In *Count 3*, plaintiff alleges that the hospital defendants violated federal and state laws "by setting up a fraudulent system in which [they] prepared two separate sets of medical records; one set [plaintiff] has been able to see and another set of records [plaintiff] has not been able to see." *Id.* ¶ 315; *see id.* ¶¶ 307–23. In *Count 4*, plaintiff alleges that the hospital defendants failed to maintain accurate medical records in violation of federal and state laws. *See id.* ¶¶ 324–46. In *Count 5*, plaintiff alleges that the hospital defendants withheld access to plaintiff's medical records from her in violation of federal and state laws. *See id.* ¶¶ 347–53. In *Count 6*, plaintiff alleges that the hospital defendants committed various violations of HIPAA and New York's Public Health Law, including the unauthorized amendment and disclosure of medical records. *See id.* ¶¶ 354–92. In *Count 7*, plaintiff alleges that after she filed this action, the hospital defendants destroyed the fraudulent second set of her

medical records they had created, which violated obstruction-of-justice statutes.  *See id.* ¶¶ 393–403.  Finally, in ***Count 8***, plaintiff alleges that the hospital defendants altered and falsified her medical records.  *See id.* ¶¶ 404–25.

To plead fraud under New York law, a plaintiff must allege "(1) a material misrepresentation or omission of fact (2) made by a defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (brackets and citation omitted); *see Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 491 (N.Y. 2016).  In addition, a claim sounding in fraud must meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires that the allegations "state with particularity the circumstances constituting fraud."  To satisfy the particularity requirement, the complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022) (citation omitted).

Here, plaintiff's allegations fall far short of stating a claim (or eight claims) for fraud.  Among other reasons, the allegations do not identify any specific fraudulent statements or omissions with the particularity required under Rule 9(b).  While plaintiff claims that the hospital defendants made "false representations that [they] followed federal and New York state laws," FAC ¶ 407, and "that they were credible medical providers," *id.* ¶ 424, such generalized allegations are much "too vague and conclusory to satisfy the heightened pleading requirements of Rule 9(b)," *Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175, 201 (D. Conn. 2014).  So too are plaintiff's generalized allegations that the hospital defendants "used deceptive legalese."   FAC ¶ 466.

Moreover, plaintiff cannot state a claim by aiming "sweeping, undifferentiated allegations" against the hospital defendants en masse. *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 517 (W.D.N.Y. 2007). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Ibid.* (citations, quotation marks, and ellipses omitted).

Plaintiff also alleges that the hospital defendants "mindlessly mimicked false stories about [plaintiff's] mental health created by the [Deutsche Bank]/Wilder team, even though the false claims about [plaintiff's] mental health are based on fake messaging accounts Wilder set up in [plaintiff's] name without [plaintiff's] knowledge or consent." FAC ¶ 37. However, once again, this allegation does not identify with sufficient particularity what the "false stories" were, nor does it identify the speaker or where or when the statements were made. *See Radin v. Tun*, No. 12-CV-1393 (ARR) (VMS), 2015 WL 4645255, at *19 (E.D.N.Y. Aug. 4, 2015) (finding particularly requirement was not met because the plaintiff "complain[ed] of allegedly false medical records without specifying the particular misrepresentations or omissions made in those records, and when they were made").

Elsewhere, plaintiff alleges that the hospitals' medical records incorrectly stated that she exhibited symptoms of "pressured speech," FAC ¶¶ 110, 166–67, and that the medical records included "vague statements like [plaintiff] was 'paranoid'" that lacked a factual basis, *id.* ¶ 342. Even assuming plaintiff has described the content of these allegedly false statements with sufficient particularity, plaintiff does not identify the speaker or when the statements were made. Nor does she explain why the statements were fraudulent, beyond rank speculation that it is "not believable" that several hospitals would "make the same . . . mistake." *Id.* ¶ 173.

8

Plaintiff comes closest to satisfying Rule 9(b) in describing her interaction with a physician at Lenox Hill, Dr. Huang.  Plaintiff alleges that when she went to Lenox Hill to get a rape kit, "Dr. Huang asked [her] what had changed about her a year ago that caused her to be raped," *id.* ¶ 83, and Dr. Huang "lied and told Plaintiff that [Lenox Hill] would need to speak to someone [plaintiff] knew to verify Plaintiff's story," *id.* ¶ 86.  Plaintiff alleges this was a lie because "[r]ape victims are not required to tell anything to medical professionals in hospitals after they have requested rape kits."  *Id.* ¶ 87.  Plaintiff also alleges that an unidentified "hospital administrator lied to her" because when plaintiff asked to switch doctors, the administrator "said [plaintiff] could have a new doctor," but plaintiff "learned through her medical records that Dr. Huang remained her attending physician."  *Id.* ¶ 92.  These allegations provide at least some details regarding the specific statements made, and they identify the speaker with respect to the statements made by Dr. Huang.  However, plaintiff still does not specify "when the statements . . . were made" and "why the statements . . . are fraudulent."  *Olson*, 29 F.4th at 71; *see B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 482 (S.D.N.Y. 2010) (finding allegations "too vague to satisfy Rule 9" because, among other reasons, "[plaintiff] does not identify . . . at what time" representations were made, and "[plaintiff] does not say why these representations turned out to be fraudulent, just that they turned out to be wrong").

Plaintiff argues that "the specific facts surrounding [the hospital defendants'] fraud are contained in files [plaintiff] has not been able to see but should be able to view upon 'discovery'" and "[plaintiff] cannot possibly plead fraud with absolute particularity because she does not have all the necessary facts."  Pl.'s Opp'n to NYPQ 13–14 (Dkt. #42); *see also* Pl.'s Opp'n to Lenox Hill 16–17 (Dkt. #43); Pl.'s Opp'n to NYU Langone 12–13 (Dkt. #44).  However, many of the necessary details lacking from the complaint are facts that would be known to plaintiff, such as

the content of statements that were made to plaintiff, and when, where, and by whom those statements were made.  In any case, plaintiff's arguments are wholly without merit.  "One of the purposes of Rule 9(b) is to discourage the filing of complaints as a pretext for discovery of unknown wrongs."  *Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989) (citation and quotation marks omitted).  "[Plaintiff's] contention," therefore, "that discovery will unearth information tending to prove [her] contention of fraud, is precisely what Rule 9(b) attempts to discourage."  *Ibid.*

Plaintiff's fraud claims are dismissed for failure to state a claim.

## II.  Breach of Fiduciary Duty

The complaint asserts three claims of breach of fiduciary duty against the hospital defendants.  FAC ¶¶ 426–57 (Counts 9–11).  ***Count 9*** alleges that the hospital defendants, as healthcare providers, owed and breached fiduciary duties to plaintiff by failing to "provide information to [plaintiff] as stated by HIPAA and New York State laws" and failing to "send written letters to [plaintiff]" if they "intended to deny access to information [plaintiff] requested." *Id.* ¶¶ 430–33.[*]  ***Count 10*** alleges that under 45 C.F.R. § 164.524(d)(3), the hospital defendants "had an affirmative duty to 'inform' [plaintiff] 'where to direct the request for access,'" and they failed to do so.  FAC ¶¶ 438–40.  Plaintiff also alleges that federal and state laws required the hospital defendants to keep on file any authorizations to speak to third parties about plaintiff, and that they failed to do so.  *Id.* ¶¶ 441–45.  ***Count 11*** alleges that the hospital defendants breached fiduciary duties by failing to keep plaintiff's medical information "secure and confidential" and

---

[*] Count 9 is asserted against "All Defendants," *see* FAC p. 72, although the allegations in that count involve only the hospital defendants and do not mention the City of New York.  To the extent plaintiff asserts a claim of breach of fiduciary duty against the City of New York based on the hospital defendants' alleged failure to provide plaintiff with medical records, that claim fails.  As described below, plaintiff does not adequately allege a fiduciary duty by the hospitals—let alone the City of New York—related to the provision of medical records.

by disclosing medical information to third parties.  *Id.* ¶¶ 450–53.  For each count, damages allegedly include "lost employment opportunities; legal fees and costs associated with various legal filings; and harm to [plaintiff's] reputation, including, but not limited to false claims [plaintiff] has mental health disorders she does not have."  *Id.* ¶¶ 436, 448, 457.

To state a claim for breach of fiduciary duty in New York, "a plaintiff must allege: '(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.'"  *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (quoting *U.S. Fire Ins. v. Raia*, 942 N.Y.S. 2d 543, 545 (App. Div. 2012)).

Plaintiff fails to state a claim for breach of fiduciary duty.  As described above, plaintiff's claims center on (1) the hospital defendants' alleged failure to turn over plaintiff's medical records to her, and (2) the hospital defendants' alleged disclosure of plaintiff's confidential information to third parties.  With respect to the first category, plaintiff does not provide any support for her contention that the hospital defendants had a fiduciary duty to provide her with medical records, and the Court is aware of none.  Indeed, at least one judge in this district has rejected such arguments as lacking a basis in law.  *See Shelton v. CIOX Health, LLC*, No. 17-CV-808 (ENV) (LB), 2018 WL 4211447, at *5 (E.D.N.Y. July 20, 2018) (plaintiff's "attempt to graft a fiduciary duty onto [defendant's] provision of medical records fails").

The second category of claims, based on defendant's alleged unauthorized disclosure of confidential information, also fails.  "[D]octors have fiduciary duties to their patients . . . relat[ing] to confidentiality," *ibid.*, and "hospitals and medical corporations[] may be held vicariously liable for the wrongful acts of their employees if those acts were within the scope of employment and were committed in furtherance of the employer's business," *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651 (ARR) (RML), 2020 WL 3403191, at *20 (E.D.N.Y. June 19, 2020).

However, plaintiff's allegations of misconduct are far too vague and speculative.  Plaintiff does not specify what confidential information was disclosed or who at the hospitals disclosed it, let alone adequately allege that "[t]he Hospital employees who transmitted [her] confidential medical information acted within the scope of employment or that the Hospital reasonably could have foreseen their conduct," *Robles*, 2020 WL 3403191, at *21.  Plaintiff argues that some of this information has been "fraudulently concealed" by the hospital defendants and she "has pled what was possible under the circumstances."  Pl.'s Opp'n to NYPQ 3; Pl.'s Opp'n to Lenox Hill 2; Pl.'s Opp'n to NYU Langone 3.  However, this purely speculative assertion cannot excuse plaintiff from meeting the pleading requirements.  *See Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 675 (S.D.N.Y. 2017) ("[M]ere speculation about information that the defendants may possess is insufficient to plausibly plead a claim."), *aff'd sub nom. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019).

Plaintiff's claims of breach of fiduciary duty are therefore dismissed for failure to state a claim.

## III.   Intentional Infliction of Emotional Distress

The complaint asserts four counts of IIED against all hospital defendants, FAC ¶¶ 458–93, 525–60 (Counts 12–13, 15–16), and one count of IIED against only NYU Langone, *id.* ¶¶ 561–70 (Count 17).  **Count 12** alleges that the hospital defendants are vicariously liable for plaintiff being stalked by Wilder's agents, which intentionally caused her emotional distress.  *Id.* ¶¶ 458–75.  **Count 13, 15, and 16** allege that the hospital defendants intentionally caused plaintiff emotional distress by falsifying medical records to make it appear that plaintiff has a mental illness and that Wilder had a right to be in plaintiff's home, *id.* ¶¶ 476–93, by destroying plaintiff's medical records, *id.* ¶¶ 525–47, and by sharing plaintiff's medical information with third parties, *id.* ¶¶ 548–60.  **Count 17** alleges that "[c]learly, NYU Langone works for the [Deutsche Bank]/Wilder

team," and yet it failed to report this conflict of interest to the Court, causing plaintiff emotional distress. *Id.* ¶¶ 561–70.

To state a claim for IIED under New York law, a plaintiff must plausibly allege (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress. *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157–58 (2d Cir. 2014). "The first element sets a high bar to relief, requiring 'extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society.'" *Friedman v. Self Help Cmty. Servs., Inc.*, 647 F. App'x 44, 47 (2d Cir. 2016) (quoting *Turley*, 774 F.3d at 157). An IIED claim is "highly disfavored" under New York law and "is to be invoked only as a last resort." *Turley*, 774 F.3d at 158 (citations omitted). Moreover, "the New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct 'falls well within the ambit of other traditional tort liability.'" *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (quoting *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (N.Y. 1978)). Indeed, "[a]ll four Appellate Division courts [in New York] have answered the question and held that it cannot." *Ibid.* (collecting cases).

Plaintiff fails state a claim for IIED under New York law. The claims based on the hospital defendants' alleged falsification, destruction, and unauthorized disclosure of plaintiff's medical records and information do not adequately plead "extreme and outrageous conduct." As courts have held when faced with claims of similar or comparably severe conduct, such allegations do not clear the bar of "so transcend[ing] the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Friedman*, 647 F. App'x at 47; *see, e.g.*, *Doe v. Cmty. Health Plan-Kaiser Corp.*, 709 N.Y.S.2d 215, 218 (App. Div. 2000) (disclosure of patient's medical

records was not sufficiently extreme and outrageous); *Chanko v. Am. Broad. Cos.*, 49 N.E.3d 1171, 1178–79 (N.Y. 2016) (broadcasting footage of a patient's medical treatment and death in a hospital emergency room without the patient's consent was "offensive" but "not so atrocious and utterly intolerable as to support a cause of action" for IIED); *Cardona v. Cmty. Access, Inc.*, No. 11-CV-4129 (MKB), 2013 WL 304519, at *9 (E.D.N.Y. Jan. 25, 2013) (allegations that plaintiffs were "forced to defend themselves against fabricated allegations/charges" were "not sufficiently outrageous"); *Montalvo v. J.P. Morgan Chase & Co.*, 906 N.Y.S.2d 781 (Sup. Ct. 2009) ("[A]llegations involving a threat to . . . provide the police with false information to cause [plaintiff's] arrest are insufficient to support a cause of action sounding in the intentional infliction of emotional distress."). Nor is it remotely plausible that NYU Langone's alleged failure to disclose a conflict of interest to the Court rises to the level of extreme and outrageous conduct for the purposes of an IIED claim. Finally, even assuming *arguendo* that Wilder's agents' alleged stalking of plaintiff could constitute extreme and outrageous conduct, plaintiff fails to plausibly allege a causal connection between the hospital defendants' conduct and the alleged stalking, beyond the conclusory and legally baseless assertion that the hospitals are "vicariously liable." FAC ¶ 471. Plaintiff's IIED claims are therefore dismissed for failure to state a claim.

## IV. Civil RICO

In **Count 14** of the complaint, plaintiff asserts a civil RICO claim under 18 U.S.C. § 1962(c) against the hospital defendants. FAC ¶¶ 494–524. Plaintiff alleges that the hospital defendants were all associated with the "Predator-Protection Enterprise," which "consists of [Deutsche Bank], Christopher Wilder, Margaret Watson, Lehman Brothers, NYU Langone, [Lenox Hill], and NYPQ, and the NYPD as well as others known and unknown." *Id.* ¶ 496. She alleges that "[t]he common purpose of the Predator-Protection Enterprise was to protect Wilder's and [Deutsche Bank's] reputation, prevent negative public disclosures about Wilder, the Bank, and

[Deutsche Bank's] former employees' criminal acts, and discredit those who might accuse [Deutsche Bank] and the Bank's former employees of wrongdoing or expose that wrongdoing." *Id.* ¶ 497.

To plead a substantive violation of the RICO statute under Section 1962, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an[] interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)); *see* 18 U.S.C. § 1962(c).  Plaintiff has failed to adequately allege various of these required elements, including predicate acts, the existence of an enterprise and the hospital defendants' roles therein, and an interstate or foreign commerce effect.

## A.   Predicate Acts

First, plaintiff has not adequately alleged that the hospital defendants committed at least two predicate acts of racketeering activity.  *See* 18 U.S.C. §§ 1961(1), 1961(5), 1962(c); *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997).  Where a plaintiff predicates a RICO claim on allegations of fraud, she must satisfy Rule 9(b)'s heightened pleading requirements.  *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004); *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 771 F. App'x 498, 501 (2d Cir. 2019).

Plaintiff alleges that the "pattern of racketeering activity here is based on numerous instances of mail and wire fraud," and she lists "acts in furtherance of the fraud schemes" that mirror the allegations discussed in connection with her other claims: that the hospital defendants disclosed plaintiff's medical records to third parties, used a system of hidden records, mimicked false stories about plaintiff's mental health, created inaccurate medical records, failed to follow

proper medical procedures, failed to procure rape kits, and destroyed evidence. FAC ¶¶ 499–500. Even assuming *arguendo* that these alleged actions could constitute mail or wire fraud, for the same reasons discussed above in connection with plaintiff's fraud claims, plaintiff fails to plead any predicate acts of fraud with the particularity required by Rule 9(b). *See supra* pp. 6–10.

### B.    Enterprise

Second, plaintiff has failed to adequately allege the existence of a RICO enterprise or the hospital defendants' roles therein. The RICO statute defines "enterprise" broadly to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise, therefore, is "'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *First Cap. Asset Mgmt.*, 385 F.3d at 173 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Because a RICO enterprise is not coterminous with the pattern of racketeering activity it commits, *Turkette*, 452 U.S. at 583, the plaintiff must plead that the defendants operated through an organization with "an ascertainable structure distinct from that inherent in a pattern of racketeering," *Wood v. Inc. Vill. of Patchogue*, 311 F. Supp. 2d 344, 357 (E.D.N.Y. 2004). As for defendants' role in the enterprise, "a RICO defendant charged with violating section 1962(c) [must] have had 'some part in *directing* [the enterprise's] affairs." *D'Addario v. D'Addario*, 901 F.3d 80, 103 (2d Cir. 2018) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). "A RICO defendant will not be liable for mere participation in a racketeering act, but will sustain liability under the statute for participation in the operation or management of an enterprise through a pattern of racketeering activity." *Ibid.* (citation and quotation marks omitted).

16

Here, plaintiff fails to allege any facts plausibly suggesting that the hospital defendants formed an enterprise "separate from the pattern of racketeering activity" described in the complaint. *First Cap. Asset Mgmt.*, 385 F.3d at 173. For example, the complaint does not include any allegations about the alleged enterprise's "structure," *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 475 (E.D.N.Y. 2007), or "the mechanics of the alleged ongoing working relationship among defendants," *Cont'l Petrol. Corp. v. Corp. Funding Partners, LLC*, No. 11-CV-7801 (PAE), 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012). Plaintiff alleges that the hospital defendants were associated with "the Predator-Protection Enterprise," with a common purpose of protecting Wilder and his agents, *see* FAC ¶¶ 496–97, but "[s]uch a 'threadbare recital' of the enterprise element, 'supported by mere conclusory statements, does not suffice' to state a RICO claim," *Limtung v. Thomas*, No. 19-CV-3646 (RPK) (MMH), 2021 WL 4443710, at *8 (E.D.N.Y. Sept. 28, 2021) (quoting *Iqbal*, 556 U.S. at 678) (brackets omitted). Moreover, plaintiff does not allege any facts plausibly suggesting that the hospital defendants participated in the operation or management of any enterprise.

### C.   Interstate or Foreign Commerce

Third, to state a claim under RICO, a plaintiff must allege that the hospital defendants' RICO enterprise had at least a "minimal effect" on interstate (or foreign) commerce. *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001); *see* 18 U.S.C. § 1962(c). "Although the law in this Circuit does not require RICO plaintiffs to show more than a minimal effect on interstate commerce, even a minimal showing requires some factual allegations of a nexus with interstate commerce." *Lally v. Leff*, No. 17-CV-4291 (JFB) (SIL), 2018 WL 4445152, at *5 (E.D.N.Y. Sept. 18, 2018) (citations, quotation marks, brackets, and ellipses omitted). Plaintiff's complaint states only that "[t]he Predator-Protection Enterprise activities affected interstate commerce," for instance by "us[ing] multiple facilities of interstate commerce, such as wire transfers of money,

telephone calls, and emails." FAC ¶ 498.  These "vague and conclusory assertions regarding mails, wires, and interstate commerce . . . are thus insufficient to meet even the low pleading threshold." *Lally*, 2018 WL 4445152, at *5.

Accordingly, plaintiff has failed to adequately plead the interstate or foreign commerce element of a RICO violation—just as she has failed to adequately plead predicate acts or that the hospital defendants operated through a RICO enterprise.  For these reasons, plaintiff's RICO claim is dismissed.

## V.    Civil Conspiracy

In *Count 18* of the complaint, plaintiff asserts a civil conspiracy claim under 42 U.S.C. § 1985 against the City of New York and NYU Langone.  FAC ¶¶ 571–79.  Plaintiff alleges that "[s]tarting in January of 2018 and continuing for several years, the NYPD conspired among its various divisions, NYU Langone, the Wilder and [Deutsche Bank] teams and others for the purpose of depriving, directly or indirectly, [plaintiff] of equal protection under the law with the intent to deny her right to access the courts related to the violent assaults she endured from Wilder and his psychopath associates."  *Id.* ¶ 572.  She further describes the object of the conspiracy as "conceal[ing] the facts of the crimes [plaintiff] reported to the NYPD," *id.* ¶ 573, and "conceal[ing] . . . Detective Biondi's police misconduct . . . when he forced [plaintiff] . . . to leave the police station" in February 2017, *id.* ¶ 574.  In furtherance of this conspiracy, the alleged conspirators "engaged in oral, written, and electronic communications . . . regarding their agreement not to accurately test [plaintiff's] rape kits, and to destroy another rape kit."  *Id.* ¶ 576.  Further, "several steps were taken to conceal these unconstitutional actions, including misrepresenting material facts to [plaintiff] (e.g., falsely claiming there was no evidence on her rape kits), and withholding documents and information from [plaintiff] (e.g., the DNA and toxicology reports from the rape kits)."  *Id.* ¶ 577.

To plead a violation of Section 1985, "a plaintiff must allege: (1) a conspiracy, (2) which has an intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right." *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009). "[A] pro se complaint 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" *Jasper v. Fourth Ct. of Appeals*, No. 08-CV-7472 (LAP), 2009 WL 1383529, at *3 (S.D.N.Y. May 18, 2009) (quoting *Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir. 1987)); *see Maack v. Wyckoff Heights Med. Ctr.*, No. 15-CV-3951 (ER), 2017 WL 4011395, at *7 (S.D.N.Y. Sept. 11, 2017) (dismissing Section 1985 claim at pleading stage because "[p]laintiff's allegations of a secret settlement are unsubstantiated and implausible"), *aff'd*, 740 F. App'x 1 (2d Cir. 2018). A plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citation omitted). Here, plaintiff has not "alleged, except in the most conclusory fashion, that any such meeting of the minds occurred." *Id.* at 111. For example, plaintiff does not allege any specific facts from which it can be reasonably and plausibly inferred that NYU Langone, the NYPD, and others agreed to prevent plaintiff from getting a rape kit or otherwise protect Wilder. Rather, "it would require pure speculation to use the facts alleged against [defendants] to assume [they] formed part of a conspiracy." *Dilworth v. Goldberg*, No. 10-CV-2224 (RJH) (GWG), 2011 WL 3501869, at *20 (S.D.N.Y. July 28, 2011), *report and recommendation adopted*, 2011 WL 4526555 (S.D.N.Y. Sept. 30, 2011).

Plaintiff's conspiracy claim is therefore dismissed against NYU Langone. And because the deficiencies in plaintiff's conspiracy claim apply equally to the City of New York, the claim is

also dismissed against the City of New York.  *See Seinfeld v. Allen*, No. 02-CV-5018 (DLC), 2005 WL 1231644, at *5 (S.D.N.Y. May 25, 2005) ("Because the defect in the Complaint applies equally to moving and non-moving defendants, the action is dismissed in its entirety."), *aff'd*, 169 F. App'x 47 (2d Cir. 2006); *Smith v. Mills*, No. 20-CV-2260 (RPK) (RLM), 2021 WL 4133867, at *5 (E.D.N.Y. Sept. 10, 2021) (similar), *aff'd sub nom. Smith v. Nassi*, No. 21-2748, 2022 WL 11555269 (2d Cir. Oct. 20, 2022).

## VI.   Motions to Strike and Leave to Amend

In addition to the hospital defendants' motions to dismiss, several motions to strike are pending before the Court.  First, defendants Lenox Hill and NYU Langone both moved to strike a second amended complaint that plaintiff filed on January 2, 2024, which asserts numerous new causes of action and additional allegations.  *See* Second Am. Compl. ("SAC") (Dkt. #31); Lenox Hill Mot. to Strike SAC (Dkt. #32); NYU Langone Mot. to Strike SAC (Dkt. #34).  Plaintiff moved to strike Lenox Hill's motion to strike her second amended complaint.  As previously explained in several docket orders, because plaintiff already amended her pleading once as a matter of course on September 14, 2023, plaintiff may amend her complaint again "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2); *see* Jan. 8, 2024 Order; Jan. 31, 2024 Order.  Because plaintiff did not obtain the hospital defendants' written consent or the Court's leave, Lenox Hill's and NYU Langone's motions to strike plaintiff's second amended complaint are granted, and plaintiff's motion to strike Lenox Hill's motion to strike is denied.  However, within 30 days of the issuance of this order, plaintiff may file a letter or motion seeking leave to file a second amended complaint.  The letter or motion shall attach the proposed second amended complaint and explain why the second amended complaint cures the deficiencies identified in this order.  Defendants may file a response within 14 days of the filing of plaintiff's letter or motion.

If plaintiff does not move for leave to amend within 30 days, the hospital defendants shall be dismissed from this case.

Second, NYU Langone moved to strike an affidavit that plaintiff submitted in support of her opposition to the hospital defendants' motions to dismiss.  *See* NYU Langone Mot. to Strike Aff. (Dkt. #48); Pl.'s Aff. in Supp. of Opp'n (Dkt. #45).  NYPQ also opposed plaintiff's filing of the affidavit.  *See* NYPQ Ltr. Opposing Pl.'s Aff. (Dkt. #46).  NYU Langone and NYPQ request that the Court disregard the affidavit both because it was untimely filed and because a number of the statements contained therein correspond to allegations plaintiff made in her proposed second amended complaint.  The motion to strike the affidavit is granted.  The Court advised plaintiff on numerous occasions that she could not file a second amended complaint without the Court's leave. Plaintiff cannot circumvent that directive by introducing new allegations through the side door of an untimely affidavit.

## CONCLUSION

The hospital defendants' motions to dismiss are granted.  Counts 1 through 18 of the operative complaint, including all claims against the hospital defendants, are dismissed.  Within 30 days of the issuance of this order, plaintiff may file a letter or motion seeking leave to file a second amended complaint.  Defendants may file a response within 14 days of the filing of plaintiff's letter or motion.  If plaintiff does not move for leave to amend within 30 days, the hospital defendants shall be dismissed from this case.

Although plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and

therefore *in forma pauperis* status is denied for the purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated:  September 17, 2024
        Brooklyn, New York